IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JACK DOUGLAS HENRY,

        Plaintiff,

vs.                                       No.  CV 00-565 JP/KBM

PHILIP EHLY and JANICE EHLY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

At a pre-trial conference on April 4, 2001, the issue of subject-matter jurisdiction was raised by Defendants.  They challenged the allegation of the Texas citizenship of Plaintiff, suggesting instead that he was a New Mexico citizen at the time he filed his Complaint.  Defendants are citizens of New Mexico.  The Court's subject-matter jurisdiction depends upon the diversity of citizenship of the parties under 28 U.S.C. § 1332(a)(1).

The Court conducted two telephonic conferences with counsel, one on April 5, 2001, and another on April 6, 2001; the latter conference was on the record.  Not satisfied that it had enough information on which to make a determination of citizenship, the Court conducted a hearing on April 23, 2001 in Las Cruces, New Mexico at which time exhibits were introduced, along with the testimony of three witnesses, Plaintiff Jack Douglas Henry, his wife Jerrie Henry, and his caretaker Joan Johnston.  After carefully considering all the evidence and applicable law, the Court finds and concludes that Plaintiff has failed to carry his burden of persuasion that he was a Texas citizen at the time he filed the Complaint in this case, and that the Court lacks subject-matter jurisdiction over this matter.

Federal district courts have jurisdiction over civil actions between "citizens of different States." 28 U.S.C. § 1332(a)(1).  The existence of diversity jurisdiction is usually  determined from the

complaint.  Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972).  Once allegations of diversity have been challenged, however, the party invoking federal jurisdiction must prove citizenship by a preponderance of the evidence.  Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983); Mid-Continent Pipe Line Co. v. Whiteley, 116 F.2d 871, 873 (10th Cir. 1940).  The court looks to the time the complaint was filed to determine whether diversity jurisdiction exists.  Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

For purposes of diversity jurisdiction, one is a citizen of the state in which he is domiciled. Crowley, 710 F.2d at 678.  Domicile is the combination of physical presence in a location and an intent to remain there indefinitely.  Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); Crowley, 710 F.2d at 678.  A party's residence is *prima facie* evidence of domicile, but if the matter is disputed, proof of domiciliary intent is required to establish citizenship of a party.  State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

The fact that a person who has moved to a different state has a vague desire some day to return to a former domicile does not prevent a change of domicile; it is sufficient that the person's intent to remain in the new location extends into the indefinite future.  Gilbert v. David, 235 U.S. 561, 569 (1915); McDonald v. Equitable Life Ins. Co. of Iowa, 13 F. Supp.2d 1279, 1281 (M.D. Ala. 1998).

In determining where a person is domiciled, the court considers the totality of the evidence, Cressler v. Neuenschwander, 930 F.Supp. 1458, 1460 (D.Kan. 1996), but pays particular attention to "objective indicia of intent such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices."  Callicrate v. Farmland Indus., Inc., 1995 WL 463664, *5 (D.Kan. 1995).  Other factors to consider are the plaintiff's social attachments in both states, whether he retains a place of abode or investments in local

2

property or enterprise in the old state of residence, whether he has taken his family and his belongings with him, and the manner in which he lives (i.e., whether he rents or buys a home). Cressler, 930 F.Supp. at 1460.

Plaintiff, Jack Douglas Henry, was born in Texas. In the 1960s he moved to Hillsboro, New Mexico where he bought or built a home and became engaged in the business known as the S-Bar-X Saloon & Motel. Mr. Henry lived in Hillsboro where he owned and operated the business from the 1960s until he sold it in the early 1990s. In 1987 Mr. Henry moved to a condominium in Laguna Vista, Texas on the coast of the Gulf of Mexico where he felt healthier in the moister climate and at the lower altitude. He did not sell his home in Hillsboro. In 1990 or 1992 he sold the S-Bar-X business to the Jandro Partnership under a lease-purchase agreement. He retained a security interest in the liquor license and other business property.

The business did not succeed under the Jandro Partnership, and at some point the partnership was unable to continue making the payments under the lease-purchase agreement. In July 1999 the Jandro partnership executed a settlement agreement transferring the liquor license and business back to Plaintiff, Mr. Henry, and in August 1999 Mr Henry, personally and through his Penta Investments partnership, made a formal proposal to sell the liquor license and business to Mr. and Mrs. Cleary. Plaintiff's address was stated in the proposed Cleary purchase agreement as Hillsboro, New Mexico. That deal fell through. At that point, Plaintiff made a business decision to move back to New Mexico to retake and restore the business property, and to transfer the liquor license back into his name, with the plan ultimately to sell the business and license to another buyer. Mr. Henry moved back to his home in Hillsboro in September 1999.

In September 1999 Plaintiff applied to the New Mexico authorities for approval of the transfer

3

of ownership of the liquor license for the S-Bar-X Saloon back into Plaintiff's name, using his address in New Mexico.  The license was issued to Plaintiff in early March 2000, around the time of his accident.  Plaintiff held the license in April 2000 at the time he filed this lawsuit, and thereafter he continued to hold the license using his New Mexico address up to the date of the hearing.

  The business had run down under its operation by the Jandro Partnership and Plaintiff believed that it needed his personal attention to bring it back to saleable condition.  When Mr. Henry returned to New Mexico to restore the business in September 1999, he anticipated that it would take approximately four (4) months to process the liquor license application and refurbish the business premises.  *See* Request for Voluntary Temporary Suspension of Operation of Liquor License, dated July 17, 1999.  Instead, it was necessary for Plaintiff to remain in Hillsboro for a much longer time in order to complete the transfer of the liquor license back to his name.  Plaintiff testified that even after that was accomplished, he expected it would take an additional year to restore the business to a profitable venture in preparation for an eventual sale.

  The New Mexico liquor license had a significant monetary value, and the law required that the bar in Hillsboro be open and operated continuously once the license transfer was completed.[1]  On March 3, 2000 Plaintiff anticipated the transfer of the liquor license to be imminent, and he went to the Phil Ehly Insurance Agency in Truth or Consequences, New Mexico to inquire about purchasing dramshop liability for the business.  It was on that day that Plaintiff allegedly fell and injured himself in the accident that gave rise to this lawsuit.  Plaintiff filed this lawsuit on April 20, 2000.  During discovery, there was testimony that Plaintiff intended to operate the bar himself, and he claimed lost

---

[1] Section 60-6B-7, N.M. Stat. Ann. 1978, requires a business with a liquor license to be operated continuously or to face cancellation of the license.

profits from the business as a result of his accident.

From the above chronology, and considering all the other testimony at the hearing, I find that Plaintiff's intent at the time he filed this lawsuit in April, 2000 was to stay in Hillsboro, New Mexico for an indefinite time.  His goal was to restore the premises so he could market the business along with the liquor license for a fair market price.

Most of the other objective indicia of Plaintiff's intent also point to a New Mexico domicile. Plaintiff did not sell his house in Hillsboro when he moved to Laguna Vista, and he did not rent it to anyone.  Even though he sold the business in Hillsboro, it was not an outright sale; rather it involved continued payments and an understanding that the business would revert to Plaintiff's ownership if the payments were not made.  The home Plaintiff bought in Laguna Vista was a condominium, and he later built a house there, which was referred to in the testimony as a "spec" house.  That Laguna Vista house was up for sale at the time of the hearing, and there was some testimony that Plaintiff might want to buy a horse ranch in Texas.  The Laguna Vista real estate was an asset of Penta Investments, a New Mexico partnership owned by Plaintiff and his trust.

Plaintiff is licensed to drive in Texas.  His vehicles are all registered and titled in New Mexico. The vehicles are insured under Texas law, but the auto policy premium statements are mailed to Plaintiff's address in Hillsboro.  Plaintiff's most recent voter registration was in New Mexico, but he was purged from New Mexico voting records in 1993 and has not registered to vote in Texas.  He made a will in February 1997 which states that he is a resident of Nolan County, Texas; the will was executed in New Mexico.  Nolan County is in the northern part of Texas, far removed from Mr. Henry's condominium or house on the Gulf coast.  Plaintiff does not belong to any fraternal or social clubs in New Mexico or Texas.  Jerrie Henry, Plaintiff's wife, considers herself a citizen of New

5

Mexico.[2]

Plaintiff's financial connections are mostly with New Mexico. Of the bank accounts he owned or had an interest in, three were in Texas, and two of those have been closed. The January 2000 statement for the sole open account at a Texas bank shows that Mr. Henry changed his address on the account from Laguna Vista, Texas to Hillsboro, New Mexico some time in late 1999. Mr. Henry has had an interest in six bank accounts in New Mexico, in his name alone or jointly with others, or in the name of his trust. One of these has been closed. All the New Mexico accounts have a New Mexico address for the account holder, either in Hillsboro or in Albuquerque. Plaintiff's daughter-in-law lives in Albuquerque and handled much of his financial matters in 1999. The address on the 1999 statements for one New Mexico account is in Albuquerque, but all the checks have a Hillsboro address for Plaintiff and were signed by him.

In September 1998 Plaintiff formed a New Mexico limited partnership, Penta Investments, into which he transferred a small amount of cash, his real properties in Hillsboro, New Mexico, and his real property in Laguna Vista, Texas. Plaintiff is both the general partner and the limited partner in this partnership, in both his individual capacity and his capacity as trustee of a revocable trust bearing his name. The partnership has a New Mexico address and pays New Mexico tax.

Plaintiff does not pay New Mexico personal income taxes, and he gives his Texas address on his federal income tax returns. Plaintiff's Social Security benefit statements for 1999 and 2000 were sent to his address in Hillsboro, New Mexico. Plaintiff's brokerage account statements have been sent to him in New Mexico from 1995 through 2001. Plaintiff's credit card bills, as far as can be

---

[2] Mr. and Mrs. Henry married late in life and have maintained separate finances and interests. Although Mrs. Henry is a New Mexico citizen, because of the unusual relationship between her and Mr. Henry, I have not applied the presumption that both husband and wife share the same domicile.

determined from the records, consistently have been sent to a New Mexico address, although they reflect charges made in both Texas and New Mexico.

Plaintiff's health insurance for 1999 through 2001 has been with Blue Cross and Blue Shield, a New Mexico HMO. Premium notices for 2000 and 2001 were sent to Plaintiff in Hillsboro, New Mexico. In 1999 the notices were sent to Albuquerque, New Mexico. Plaintiff's address for Medicare is listed as Hillsboro in all records from 1998 through 2001, and all his medical bills from the accident have been sent to the Hillsboro address.

Plaintiff's testimony that he considers himself a citizen of Texas is not entitled to great weight because it conflicts with most of the documentary evidence. *See* Coury v. Prot, 85 F.3d 244, 251 (5th Cir. 1996) (litigant's statement of domiciliary intent entitled to little weight if in conflict with objective facts).

A domicile change may be accomplished even though the person does not intend to remain in the new location permanently; "a 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." Crowley v. Glaze, 710 F.2d at 678. Certain classes of litigants, students for example, do not reside where they are domiciled but nonetheless maintain their domiciles despite protracted periods of residence elsewhere. *See* 13B Wright & Miller, Federal Practice & Procedure, § 3612 at 527 n. 9. Similarly, a recent college graduate who was merely working in another state to gain business experience so he could come home and work in the family business "did not abandon" his domicile in his home state of Colorado. Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 293-94 (10th Cir. 1952). "While the period he expected to remain in such employment was indefinite, he had a definite, fixed intention of ultimately returning to Denver and becoming associated with the Gates Rubber Company . . . ." Id. at 293.

In Crowley v. Glaze, 710 F.2d 676 (10th Cir. 1983), the plaintiff sustained serious injuries in an accident in Colorado. He returned to his family home in Minnesota to convalesce. He filed suit a year later in federal court, alleging he was a citizen of Minnesota. He had expressed "a desire, or possibly only a hope, to return to Colorado if, as and when his condition permitted." Id. at 678. This the court termed a "floating intention" to return to a former domicile, which was insufficient to prevent the acquisition of a new domicile in Minnesota. Id.

Mr. Henry lacked the type of ties to Texas that were present in Gates. In Laguna Vista he lived in a condominium that was up for sale at the time of the hearing. He liked the climate on the Gulf coast and had a general desire to go back there for health reasons. There was testimony that Mr. Henry might purchase a horse ranch in Texas and live on it in the future. This is not the type of definite, fixed intention of returning that was present in Gates, but rather is more akin to an indeterminate or floating intention to return that was present in Crowley.

In Gilbert v. David, 235 U.S. 561 (1915), the United States Supreme Court affirmed the lower court's decision that the plaintiff had acquired a new domicile when he moved from Michigan to Connecticut, even though he had "some floating intention of returning to Michigan after the determination of certain litigation and the disposition of his property in Connecticut, should he succeed in disposing of it for what he considered it worth." Id. at 570. This case is similar. Mr. Henry moved to New Mexico to take care of the saloon in Hillsboro so that he could sell it for a price he considered it worth, with a floating intention to return to Texas after the business was reestablished and eventually sold. He also had the idea that he should stay in New Mexico until the resolution of this litigation.

The "primary purpose of federal jurisdiction over disputes between citizens of different states is to provide a neutral forum for out-of-state parties who fear that they will be subjected to local

8

prejudice if forced to litigate as strangers in a state court." 13B Wright & Miller, Federal Practice & Procedure § 3611 at 509.  It cannot be said that Mr. Henry would be subjected to local prejudice in New Mexico state court as an out-of-state party.  He is well-known in the small community of Hillsboro, and has multiple business and personal contacts in and around Hillsboro.  According to testimony, he stayed to look after the business precisely because he considered himself a "draw" for the saloon.

I conclude that Plaintiff failed to meet his burden of persuasion that his intended domicile was Texas at the time he filed this lawsuit.

IT IS THEREFORE ORDERED that this case will be dismissed without prejudice for lack of subject-matter jurisdiction.

_____
CHIEF UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:  John E. Keithly, KEITHLY & ENGLISH, Anthony, N.M.; and Babington, HOLT & BABINGTON, Las Cruces, N.M.

Counsel for Defendants Philip Ehly and Janice Ehly:  William A. Walker Jr., REEVES, CHAVEZ, WALKER & ALBERS, Las Cruces, N.M.

9